Good morning, your honors. May it please the court, Aaron Adams here on behalf of Matthew Matherne. I would like to reserve five minutes for rebuttal, please. May I proceed? You may. This is an appeal of a restitution order for $155,255.48 that was entered after a production conviction. The order rests almost entirely on a one-page chart that was prepared by a social worker in Virginia who never testified, and the government's oral correction of a $468,000 arithmetic error that appeared on the face of that chart. There was no clinical note in this record. There is no diagnostic report. There is no treatment plan. There was no witness. This court has said repeatedly in Sharma, in Ulrich, in Kim, in Majors, that while restitution hearings do operate under a relaxed set of evidentiary rules, that still every dollar of restitution must be supported by record evidence that bears sufficient indicia of reliability. That standard is not met on this record, and I would like to explain why by addressing three points. The first point is that the chart itself, which is Government Exhibit 3, it's at record $148,000. It's on its face unreliable, and that is demonstrated by the government's own correction. The second point I will make is that the chart's internal logic is itself not defended in the record. There are six concurrent therapy modalities. Some run for as little as one year. Others run for as much as 10 years, but there is no clinical explanation as to why any of that is necessary. The third argument that I will make is that the district court did not make any findings on proximate causation, despite there being uncontested record evidence that the victim in the case had some preexisting trauma prior to the involvement of Mr. Matherne. So I would like to go ahead and address those in order. You're not arguing that the victim would not have needed therapy for this event, are you? No, of course not, Chief Judge. Not at all. And, you know, counsel below, and again here today, we can see that some amount of restitution is appropriate, and some amount of therapy is appropriate. And the chart itself is just, isn't it more like a demonstrative summarizing the evidence? So the chart itself is not, I know the chart's got its flaws. In fact, there's an additional error on the chart that the subtotal for family consultation is listed at $300, but it should actually be $3,000. So you're actually, your client may be getting somewhat of a windfall here of $2,700 not having to be owed if you went by what was proven up, if you believe it was proven up. But had you noticed that? I did, Judge. In fact, and it was... That's not in anybody's brief. No. The chart is off by an additional $2,700, but it was readily available using mathematics to determine simple computation. It was, Judge, and I think that was overlooked by counsel below and simply by the more glaring error of the $468,000 error. I think that one slipped through, but you are correct, Your Honor, there is a second additional error in that. But the chart itself is not the evidence. It's just the summary statement of the evidence. So what does it matter that the chart has some errors on it as long as the evidence is there to back it up? My argument to that, Your Honor, is that the evidence isn't there to back it up because the chart is really what the district court relied on in issuing its restitution order. Was Jones' letter part of what the court considered? Yes, Your Honor. Was Jones' CV part of what the court considered? That's correct, Judge. Was Jones' cost estimate report for future counseling services part of what the district court considered? So the chart itself, the cover letter, the one-paragraph cover letter, and the CV were all admitted as exhibits. And the victim impact statement? Yes. So there was evidence from which the district court could glean the amount what counseling services constituted and that she would need counseling services, right? Yes. The concern, I think, Your Honor, is that there is no explanation as to why any of these amounts are necessary. And there's no, I mean, we're not disputing that some amount of treatment and some amount of cost is necessary. But it's how you get to those numbers, right? And this is what this appeal is ultimately about. But this isn't about like SHRMA where we have complex financial dealings and the issues are what were the actual losses and all of those kinds of things. This is not a SHRMA type case. This case is more similar to Beavers or something where we held that a letter from the victim talking about that she was going through weekly counseling was considered enough. And you could say, well, counseling is this much an hour. Yeah, Your Honor. We have a different, we tend to think that when you've been traumatized in this way that you likely will need counseling. Right. And that we know the typical going rate for this kind of counseling. And we just multiply. Right, Your Honor. And the government has certainly argued that this case follows the same as Beavers. And here's where I believe the two differ, Judge. Which is Beavers addressed a single treatment modality over a single duration at a single rate, right? It was, I think it was $100 per session for weekly counseling for one type of counseling, individual treatment counseling, individual therapy for five years. And so that was the only thing at issue in Beavers. And this court said that that was enough. That was satisfied. But here we have, as the chart demonstrates, there are six different types of counseling available. Including three alone for family counseling. There's a family counseling line item. There's a family consultation line item. There's a parent-based community service program line item. These three things are added. But there's no explanation. There's nothing saying why these three different types of. And that's just, again, that type of counseling. There's no explanation as to why each of those three are needed. Why they're needed at different rates. Why they're needed at different frequencies. Those three line items alone aggregate for approximately $45,000, just over $45,000. Which is over a third of the full amount of restitution that the district court ordered. But again, there's nothing there on which the court could say, the person evaluating has said, all of these services are necessary. They're necessary for this amount of time because this is what's needed, given her particular diagnosis. And the standard of care is that these types of trauma need treatment for this amount of time at this frequency. And so, although the government has argued that this case is closer to Beavers, I disagree with that. I think that that is a much more straightforward answer. That's sort of on the easy end of the spectrum. Whereas I believe this case is on the harder end of the spectrum. Was there any rebuttal evidence that cast doubt on the correctness of Jones' estimates? Well, Your Honor, so counsel Below at Record 119 basically tried to point out to the court all of the questions that would need to be asked of Mrs. Jones. All of these questions that we are bringing up today are all questions that counsel Below brought up. What we would like to be asked, had she been available for cross-examination? Did you ask to postpone the hearing so that you could get her there and do that, or bring your own expert, or do any of that sort of thing to alert the court that this was other than a routine part of the procedure? Not you personally. Right, of course. No, I understand, Your Honor. So, the government has made the argument that the defense should have put on a more affirmative rebuttal expert, I guess, of their own. Her ask to do so, or said, we want to cross-examine her, we think this is not right and we need to get her here and we want a continuance or something. So, counsel Below did repeatedly, if I'm correct, repeatedly say that we wanted to cross, that she should be here. I don't know whether we specifically asked for a continuance in order to make that happen. I don't think the government had any intention of doing that. Again, she is a social worker that was in Virginia, so she would have needed to have been flown out by the government. Our position, of course, is that this is not the defense's burden to do. But they could do it on Zoom in some courts. I'm sorry? They could do it on Zoom in some courts. No, that's true. Yeah, that's true. In some courts. Yeah, absolutely, Your Honor. Our position here today is that ultimately the statute puts the burden on proving this restitution matter on the government. And that an attempt to sort of say that defense should have done all of these things is really just a shift of that government's burden. Well, isn't the fact that she'd already been in therapy be some reason that the therapist would think that she might need this additional family support, that she already was a fragile person perhaps? I don't know her history, but wouldn't that's what the therapist would know? That she needs this extra family support that maybe someone else doesn't need? And the fact that she's been in therapy before is not, it doesn't cut against her needing therapy. It cuts for her needing more therapy. And, Your Honor, that would all, I think, be appropriate had Mrs. Jones actually simply said that, right? She didn't offer any kind of diagnostic report. She didn't offer a clinical note. There were no notes supporting any of this, right? There was just this chart, and the chart said, these six line items are needed. They're all needed for X period of time at such and such time per week. These are all different, right? And there's nothing that, she didn't write some comprehensive report saying, you know, this person has suffered abuse before. Have we ever required a comprehensive report for this type of abuse finance testimony, you know, for this sort of treatment? And do the other circuits require that sort of comprehensive report or do they allow these types of lesser reports frequently? Your Honor, I can't speak to what other circuits do in particular. What I can say is that this court, this circuit, has generally required that every dollar amount of restitution be supported by record evidence that bears sufficient indicia of reliability. And, you know, what we maintain here is that, you know, given the multiple errors on this chart, which is really what the district court based its decision on, it paid some mind to the cover letter that Ms. Jones wrote, although the cover letter really just says, you know, I've been treating her for such and such period of time. This is my reasonable estimate without really explaining that. I have a question. Of course. You said Beavers was on the easy end of the spectrum because the victim was only going to receive one type of therapy. If this doctor had only listed one type of therapy for the victim here, would that have been enough? Would her report have been sufficient enough to meet the evidentiary burden? I think I would have less qualms with it, Your Honor, because, again, what Chief Judge Elrod pointed out is that we're not disputing that some type of therapy is appropriate. It's clear that the victim is going to need that that's routinely offered in these cases. What my concern about is simply there are just so many different ones here. Well, let's put that many aside for now. Let's just start with one, the therapy that she was receiving. Sure. If that's all that was on this form, would that have been enough? Would this have been exactly like Beavers? There is also the problem with the arithmetic error, so I guess assuming that there had not been more errors in the math that needed to be corrected, I think that may have been sufficient. What about two types, the one for the victim and therapy for her family? Again, that would make it closer to Beavers than this case ultimately is. How about three kinds? Again, these are good questions. They're factual distinctions that we just don't have before us. Well, what I'm trying to get at is why is the report not sufficient as to each type? If you separate, I understand there's six different types and that's your issue. But if we're looking at them individually, it seems that the support provided by the letter and the experience in treating the victim would be enough if it was just that one. So why is the result different in the aggregate? Yeah, and I understand that, Your Honor. Again, I think what would have been best practice would be to have some kind of clinical note, some kind of diagnostic report explaining what her diagnosis is, what the type of therapy is needed, why it's needed for that diagnosis, why it's needed at that rate, and why we believe it's needed for X amount of time, instead of just a one-page chart that has got glaring mathematical errors in it and that doesn't provide any of that for the district court to have made its decision on. Thank you, Your Honor. If there's no further questions, I will reserve the remainder of my time. Thank you. You've saved time for a rebuttal. Good morning, Your Honor. For the record, I'm Christina Walker with the U.S. Attorney's Office. The restitution amount of $155,300 to a 15-year-old victim who was abducted and transported by the defendant from Virginia to Louisiana in order for him to sexually abuse and then photograph that abuse was not plain error. In finding this amount, the district court relied on documents submitted by the government, which included the counselor's letter, the counselor's resume, the victim impact statement, which was prepared with the assistance of the counselor, and the statement by the victim's mother, as well as the chart of the future expenses prepared by the counselor. Counsel, you're using plain error. What if we don't agree that that's the standard of review? Do you believe that it is error at all? Did the district court abuse its discretion? If we don't believe that this error was preserved? Your Honor, we would maintain that there was no abuse of discretion as well. Okay. Why didn't the government at least proofread what it's submitting to the court to have this many errors when you have such a thin amount of evidence? Your friend on the other side says it's not best practices. It's not even good practices, is it, to have this many typos and problems with a report that's summarizing the amount of money you're seeking? Your Honor, the assistant U.S. attorney handling the case did point out through an email and at the hearing that the typo with the extra zero. But there were other... But... Shouldn't the U.S. attorney have gotten the expert to do the... fix their exhibit? Or shouldn't the U.S. attorney have used a different sheet or something? This is just... This is the United States with very kind of a sloppy chart that they're presenting as evidence. It seems like that could be... That should have been done better. They should have asked for a postponement till they could get their act together and have it better. Yes, Your Honor. I guess our point would be in terms of the social worker. Maybe she's not very good with numbers, but that still doesn't detract from her ability to treat this child and to articulate the treatment necessary for the child. Well, David, you don't have to rely on the social worker for the... She can say what her rate is and how much she needs and someone else can calculate the totals, you know, after they... She says what her rate is and how many hours the person needs if she can't do math. But it seems to me that it was kind of a sloppiness, not a failure to be able to actually do math. Yes, Your Honor. Fortunately, that... At least the error with the exercise was caught and the judge never relied on that and in coming up with his calculation, he did not use that inaccurate number. I mean, Your Honor is correct, there was that other mathematical error, but the glaring one with the extra zero, that was corrected initially and therefore the judge didn't even use the wrong number. Well, I mean, she didn't get $2,700 that she would have been entitled to even using her own chart that was never even caught by anybody at the time. That's true, Your Honor. So it's not a good day for the government that day, was it? Well, Your Honor... Was it? All I can say is that the important thing was that this woman articulated what this child needed and the judge... Okay, is the message received that it needs to be more careful, that the government needs to be more careful?  I will make sure that that message is conveyed to the appropriate parties. Thank you. Did you have any argument, additional argument that you'd wish to present? Yes, Your Honor. I was just going to point out that, as Your Honor had indicated, that SHRMA is distinguishable because, again, those types of errors went to the... were more complicated and dealt with. For instance, there, the insurer listed losses from 1997 when the offense conspiracy had not begun until 1998. So it's a different type of case. You're dealing with substantive errors, not mathematical errors in SHRMA. And the chart itself, if you look at the victim impact witness statement, the defendant claimed there was no diagnosis. Again, the victim impact statement was prepared with the assistance of the counselor and there was a diagnosis. It was post-traumatic stress disorder. She was diagnosed with post-traumatic stress disorder. Then in terms of treatment, again, the victim witness statement related to the victim undergoing trauma-focused cognitive behavior therapy and dialectical behavior. So even though that wasn't in the chart itself, the victim impact statement that was prepared with the assistance of the counselor contained that. In terms of the family therapy and the individual therapy, that was, again, in the victim impact statement, the victim talked about her present inability to express emotions and feeling a detachment from others to include family. And the whole family is suffering from the stress. That's the whole thing about victimization of a child. The child is victimized, but the entire family is victimized. And in this case, this family was victimized. So, again, there is an indicia of evidence in the record showing that there was a need for family therapy as well as individual therapy. And I guess in coming up with this amount, even though there were some errors, the judge explained why he felt the chart was reliable. He indicated this woman had training. You know, her resume was very thorough. She may not be very good with math, but she has a very detailed resume where she's had a lot of experience working with trauma. She has seen this child since January of 2024. This sentencing was in almost January of 2025. I mean, this restitution hearing was, so she's seen her for a year. The judge felt that having interacted with this child for that period of time with her background, her figures were appropriate and her outline of what was appropriate for this child was reliable. And he said, for instance, she's met with the victim on a weekly basis since January 2024. The document she sends is based upon her treatment of the victim as a result of the abduction and sexual abuse. Her outline of projected or estimated cost of future treatment are reasonable. So the judge saw this and that's why he felt this particular figure was appropriate. The judge's comments are congruent with a decision out of the Second Circuit, Sanderson, where a restitution order was imposed on a defendant convicted of sexual trafficking of a minor because the government's request was relied on the affidavit of a social worker who had worked extensively with the victim and whose conclusions regarding future need for care were based on her professional experience. Counsel, is there a difference between an affidavit and a letter for purposes of the court's review? Well, I guess an affidavit would have a stronger indicia of reliability because it's under oath. But our point would be that judges were relying on the opinion of the social worker. And then the other important thing about Sanderson was that the government didn't... Excuse me. The defendant didn't submit any evidence rebutting the social worker's contention. And that's part of our point, too, is that the defendant was actually sentenced in November of 2024. And in November of 2024, the defendant already had the victim impact statement where there's a reference to a counselor. So it's very clear that the child has seen a counselor in November of 2024. In January... In January of 2000, of the next year, the government has already provided the defendant the chart and all the exhibits that were introduced. So the defendant had enough time to ask the government, can I have her notes? Can you have her here? And the case was continuing until April. So he had from January until April to rebut what was in this chart, what was presented. And there's no indication the government withheld any information. There's no indication that the defendant requested any notes from the government. That's not in the record. So he had ample opportunity to try to rebut her chart. And then Judge Elrod had mentioned other circuit requirements. And for instance, in the 11th Circuit in Rothenburg, there was just a letter, not an affidavit, from a witness, an attorney's... Excuse me, the victim's attorney. There was no psychological or economic reports detailing the loss, and yet the court felt that the letter from the attorney was sufficient. It was reliable for an award. In Hopkins out of the 8th Circuit, the testimony of the victim's mother was enough, and there was no need for the opinion of a child psychologist. In Harold out of the 11th Circuit, a letter written by the parent of a victim who had attended therapy and described the victim's symptoms and had no specific amount, again, that was enough. There's no mandate in any circuit that a statement like this or this type of case have methodology, necessity, duration. You don't have to do this forensic accounting for a child victimization case. None of the circuits impose that kind of requirement. Major and Kim, cited by the defendant, again, are distinguishable because of the type of case they were. For instance, in Major, the victim had first stated that there was a safe filled with firearms that had $480,000 on it. Then they changed their mind and said that the victim was not aware of the content, and yet later they said the victim claimed $460,000. There isn't that kind of inconsistency here in her report. I mean, there is a mathematical error, but there isn't this inconsistency in terms of the treatment. It's not like she put the wrong victim or indicated that she was treating someone for depression versus treating this child. The same thing with Kim. Kim dealt with counterfeit motherboards. The probation officer had based its estimate of the loss on $200,000 for counterfeit motherboards, when in fact the $200,000 also included non-counterfeit motherboards and equipment. Therefore, that calculation was not accurate, and that again is distinguishable from here because here there was no speculated loss amount as in Kim. Here the judge made an estimate based on her chart, on her resume, on her letter, on her treating this child for over a year. This case contrasts with other cases where the Fifth Circuit has found insufficient evidence. In Vigalobos, there was absolutely no loss finding. There wasn't even a number. In Aldridge, there was absolutely no evidence that claims were fraudulent. In Jones, it was only an unsworn assertion of the government's attorney as to loss. In Etheridge, the PSI just merely listed victims. There was no amount. As to the last issue dealing with the pre-existing trauma of the child, again, the victim impact statement shows that most of the treatment was dealing with what happened in that family to that child when she returned after four weeks of sexual abuse. For instance, the victim impact statement says, since the crimes on T, she has expressed intense fear and anxiety on a daily basis. The victim also stated, my family has experienced a lot more stress, anxiety, and trouble communicating since the crime. And the mother, in her statement, says that the defendant used the prior trauma to manipulate the child to get the child to come with her. So in fact, that should be aggravating, not a minimizing factor. When you look at what the court said when it sentenced the defendant, the judge said, child pornography cases always have a victim, but the harm suffered by this victim I think exceeds whatever we find in your typical production case. This is not your typical production of child porn case. This is a significantly more serious case. So I seriously doubt the judge would consider prior trauma by a child that made her more susceptible to this abuse as something that should be considered in reducing the amount of restitution. Um. Ms. Walker, I think we have your argument unless you have something new. Oh, I'm sorry, Your Honor. You have time. Unless you have any other questions, I will make sure that our office is clearly aware of Your Honor's concern with the sloppiness in that particular, with that particular document. Thank you, Your Honor. Thank you. Thank you, Your Honor. Um. Again, you know, I'm not going to dispute that the victim in this case is entitled to some restitution. That's not what this appeal about is about, Your Honors. But the process at which we get to that number does matter. And it matters because that's what the statutes require. I believe it matters because that's what this court has required in these cases is that every dollar that is ordered as restitution needs to be supported by evidence that bears a sufficient indicia of reliability. And so getting the right number, it does matter. And um, you know, I think the government's arguments that you can just look to the victim impact statement, whether there's a PTSD diagnosis in there, there's no explanation of the diagnosing clinician, the date of the diagnosis, the criteria that was used. You know, again, that's not, that's just, it's a narrative. It's not a clinical document. Can you point us to any case that says that level of detail is required? Well, I think the cases, so the cases that I think demonstrate that it's required all talk about what level of um, reliability, the indicia of reliability that's needed. And so, you know, no, I don't have a case in front of me that says you need to know exactly when the diagnosis was um, you know, rendered as to this person. But they do, the cases just generally require that, you know, the court is satisfied that this is reliable evidence supporting this. And we have a chart that has errors on its face that provides no explanation. You know, the government spent part of its brief here discussing how the defense should have simply you know, hired their own expert to come in and rebut what this you know, what Ms. Jones said. Um, there's a problem with that, Your Honor, and the problem is is that there's no, there's no diagnostic report on which a defense expert could even begin to make their own determination of whether Ms. Jones is correct. You just said that it was the court that had to be satisfied that there was a sufficient indicia of reliability. This was the same trial court that had handled the case, viewed the evidence, photographs, um... Your Honor, it was not a trial, it was a um, it was a guilty plea. Um, so you know, I don't know whether the photographs were ever you know, the court may have done an in-camera inspection of that. I'm not aware of whether that happened. But yes, the court would have to satisfy, and the court, you know, ultimately the statutes require the court to make some findings. Um, which, again, I don't believe the court did make. It did not make those necessity findings, the proximate cause findings. It didn't address the proximate cause, which again is required um, by 2259. Uh, the government points out that, well, the court, you know, said that she, excuse me, he uh, found Ms. Jones' um, one-page um, cover letter uh, sufficient. But really what the what that is saying is, the judge is saying, well, I'm crediting that she has a treatment relationship. That's a um, credibility finding as to Ms. Jones' good faith. That is not a necessity finding that all of these different treatment modalities are needed at different durations, at different rates, over a span of, you know, such and such year, and that's required. Uh, and again, you know, that is what I believe is required for ordering restitution is that, you know, there needs to be something that we can really rely on, and you know, it's just not present in this case. And so, what I believe needs to happen, Your Honor, and what I'm asking for is the court to remand this case to the district court to engage with that evidence for the government to actually bear its burden, uh, and supporting that with a live witness, or with some kind of clinical diagnostic evidence um, backing that up. Thank you, Your Honor. Thank you. We have your argument. We appreciate the arguments in this case today, um, and this case is submitted. Thank you, Your Honor. Thank you.